IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARNELL DIXON | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. AW-11-cv-581 |
| WARDEN, | * | |
| Defendant | * | |

\*\*\*

## MEMORANDUM

After receiving state prisoner Larnell Dixon's letter Complaint stating he could not safely be housed at the Western Correctional Institution and wherein he sought solely injunctive relief (ECF No. 1), the Court directed the Maryland Attorney General file a show cause response. ECF No. 2. The Court noted counsel's response would constitute neither acceptance on behalf of any named defendants, nor waiver of any arguable defenses. The Maryland Attorney General responded and Plaintiff replied. ECF Nos. 3, 4 & 9. Counsel was directed to supplement their response. ECF No. 11. The Maryland Attorney General has field its Court-directed supplemental response and Plaintiff has replied. ECF Nos. 12 & 13.

For the following reasons, the Court finds emergency injunctive relief is unwarranted and emergency relief will be DENIED. Dixon will be granted twenty-eight days to inform the Court whether he wants to continue consideration of the claims in the Complaint or withdraw this case.

**I.    BACKGROUND**

Dixon, a self-represented inmate, initiated these proceedings by claiming that due to the nature of his crime he and his brother is the target of other inmates.[1] Dixon states he has previously been assaulted by gang members. He states he sought, but has been denied, protective custody. Dixon further claims that he is on disciplinary segregation for refusing to be housed in the general population. He seeks long term protective custody. ECF No. 1.

---

[1] The Court previously advised Dixon that he may not bring a claim on behalf of his brother.

Defendants indicate that on March 7, 1997, Dixon was placed on Protective Custody ("PC"). Dixon was placed on protective custody due to his having been stabbed by another inmate on August 29, 1996, and due to his case being highly publicized at the time of its occurrence. Dixon is serving a life sentence without parole for first degree murder, first degree rape, first degree sex offense, and sodomy of a child. He is a maximum security status inmate. ECF No. 3, Ex. 1-3.

Dixon was removed from PC on May 21, 2009. In deciding to remove Dixon from PC, the case management team noted Dixon had few documented enemies and significant time had passed since both his offense and the assault upon him in 1996. *Id*., Ex. 2-4. Defendant indicates that Plaintiff's removal from PC was in accordance with the Case Management manual which provides that "Every effort shall be made by case management staff and the managing official to find suitable alternatives to protective custody housing." *Id*., Ex. 1, Ex. 5. Additionally, assignment to general population enabled Dixon to participate in activities and programming. The case management team further noted that Dixon's case was no more notorious than a large group of inmates in general population and that numerous inmates convicted of child sex offenses are housed in general population. The case management team's recommendation was approved by the Warden on May 21, 2009. *Id*., Ex. 1 & 2.

On June 14, 2009, Dixon received two notices of infractions for fighting with his cell mates. *Id*., Exs. 1, 6, & 7. Plaintiff alleged that the first fight, with inmate Rogers, was due to his crime, however Dixon did not allege the fights were due to his crime at his adjustment hearings, nor did he indicate to staff that he felt his life was in danger. *Id*., Ex. 6 & 7. Additionally, records reflect that during the second fight, after inmate Robinson had complied with correctional officer's orders to be handcuffed, Dixon charged him and struck him in the back.[2] Dixon continued striking Robinson

---

[2] Plaintiff states that he acted in this manner due to his belief that he would be moved from the cell only if the correctional officer witnessed an altercation between inmates. ECF No. 4.

until the responding officer applied pepper spray. Both inmates involved in the altercations with Plaintiff were added to his enemies list and transferred from WCI. *Id*., Ex. 1.

Plaintiff did not inform case management that he believed his life is in danger, although case management was aware he was refusing housing to avoid general population. *Id*. Defendant indicates that Plaintiff refused to appear for his annual security level review where he could have discussed concerns for his safety. *Id*., Exs. 1 & 3. Plaintiff states he did appear for his review and stated his request for PC. ECF No. 4.

Plaintiff maintains that a hit has been placed on him because of the crime for which he is incarcerated. He claims that the inmate who stabbed him in 1996 is a member of the BGF prison gang. He claims that the "hit" is still on him and he is at risk from other members of the BGF gang. ECF No. 4. Defendants note that it has been over 17 years since the attack upon Plaintiff which resulted in his placement on protective custody. ECF No. 12. Plaintiff was removed from PC in May, 2009. He was placed on disciplinary segregation in June 14, 2009, due to fights with other inmates and has remained on disciplinary segregation due to his refusing housing. *Id*., Ex. 1. No known enemies of Plaintiff are housed at WCI. ECF Nos. 3 & 12.

Lt. Likin, the Housing Unit Manager where Plaintiff is housed avers that Plaintiff has not reported to him that he is in fear for his safety. Likin further avers that he is not aware that Plaintiff has expressed such a concern to any other staff member on the segregation unit. ECF No. 12, Ex. 2. Case Management Specialist Winters also avers that Plaintiff has failed to provide any information to staff which would enable them to address any safety concerns. Winters avers that she consulted with the Intelligence Department at WCI who indicated they have not received any information from Plaintiff concerning his belief his life is in danger nor is the Department aware of any information indicating Plaintiff's life is in danger. *Id*.

The documentary evidence before the Court demonstrates that none of Plaintiff's enemies are incarcerated at WCI. Case Management Specialist Tenille Winters further avers that Plaintiff's case will be monitored closely. ECF Nos. 3, Exs. 1 & 4.

## II.     STANDARD OF REVIEW

A preliminary injunction is an extraordinary and drastic remedy, s*ee Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), requiring a movant to demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

After considering Dixon's claims and counsel's response, the Court concludes that Dixon fails to show that he is likely to succeed on the merits. Dixon's claims have been investigated and found to be unsubstantiated. Defendant has uncovered no evidence to show that Dixon is the target of a gang hit. Additionally, Dixon has failed to show that he is likely to suffer irreparable harm without emergency injunctive relief. The Plaintiff's failure to make a clear showing of irreparable harm is, by itself, a ground upon which to deny injunctive relief. *See Direx Israel, Ltd. v. Breakthrough Medical Corporation*, 952 F.2d 802, 812 (4th Cir. 1992.) The irreparable harm must be "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989); *see also Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983). In deciding to remove Dixon from PC, the case management team noted Dixon had few documented enemies and significant time had passed since both his offense and the assault

4

upon him in 1996.  Case Management has further indicated it will closely monitor Plaintiff's case. Under these circumstances the Court finds injunctive relief is not warranted.

### III.    CONCLUSION

Absent demonstration by Dixon that emergency injunctive relief is warranted, the Court will deny his request for relief by separate order and grant him twenty-eight days to state whether he wants to proceed on his claims.  He may also provide supplemental information in support of his claims within this time period.  A separate order follows.


September 18, 2012                                        /s/
                                                   Alexander Williams, Jr.
                                                   United States District Judge